Filed 7/29/22

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| KATHY WONG, | ) | No. BV 033618 |
| | ) | |
| Plaintiff and Appellant, | ) | Pasadena Trial Court |
| | ) | |
| v. | ) | No. 20PDUD00513 |
| | ) | |
| NERSES MARKARIAN et al., | ) | |
| | ) | |
| Defendants and Respondents. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Margaret L. Oldendorf, Judge.  Affirmed.

Law Office of Allen R. King, Allen R. King, for Plaintiff and Appellant.

Law Office of O'Melveny & Myers LLP, Justine Daniels, Sarah E. Higgins and Pauline A. Nguyen, for Defendants and Respondents.


\*          \*          \*


1

Plaintiff Kathy Wong appeals from the judgment entered in favor of defendants Nerses Markarian (Markarian), Sedik Tarvirdian (Tarvirdian), and Marita Markarian Acuna (Marita Acuna) following an unlawful detainer court trial. Plaintiff sought possession of the premises on the theory defendants breached the occupancy limit of the lease agreement. Defendants prevailed on their affirmative defenses that the eviction violated certain provisions of the Just Cause and Retaliatory Evictions ordinance codified in Glendale Municipal Code, chapter 9.30 et seq. ("the Ordinance"),[1] and proved their affirmative defense of equitable estoppel. Plaintiff contends the trial court misinterpreted the Ordinance and that defendants did not prove all the elements of an equitable estoppel defense. As explained below, we affirm the judgment.

BACKGROUND

On February 18, 2020, plaintiff filed an unlawful detainer complaint seeking possession of the premises—a three-bedroom apartment, part of a multiunit property located in the City of Glendale. Plaintiff alleged that on or about January 15, 1997, defendants entered into a written lease agreement in which they agreed to pay rent of $950 on the first day of each month, which was later increased to $1,050. On February 4, 2020, plaintiff caused defendants to be served with a three-day notice to perform covenants or quit the premises, and defendants failed to comply with the demands in the notice. A copy of the rental agreement, addendum and the three-day notice were attached to the complaint. Plaintiff sought possession of the premises, forfeiture of the rental agreement, daily damages, and attorney's fees.

As pertinent, the three-day notice alleged that paragraph 4 of the rental agreement limited occupancy of the premises to Markarian, Tarvirdian, Marita Acuna, and a person identified only as "Polet,"[2] and that defendants were in violation of the rental agreement by allowing Ronald Acuna and a young girl to occupy the premises since 2017. In their answer,

---

[1]Unspecified section references are to the Glendale Municipal Code.

[2]Markarian and Tarvirdian are husband and wife and Marita Acuna and Polet are their daughters.

2

defendants admitted some, and denied other allegations of the complaint, and raised numerous affirmative defenses including equitable estoppel and violation of the Ordinance.

A court trial took place on July 26, 2021.[3] The trial court testimony relevant to the issues raised on appeal is as follows:[4] Markarian and Tarvirdian executed the one-year lease agreement on January 15, 1997. The authorized occupants as stated in the lease agreement were Markarian, Tarvirdian, Polet and Marita Acuna. Polet vacated the unit in approximately 2014. Marita Acuna's husband, Ronald Acuna, and their minor daughter, Chloe Acuna, have resided in the unit since at least 2017. Plaintiff was aware of Ronald Acuna and Chloe Acuna's occupancy in the unit since 2017, but did not object until the events in 2019 that led to this eviction proceeding.

Effective August 1, 2019, plaintiff increased defendants' rent in the amount of $100 and without offering a corresponding written lease extension. This increase brought the rent up to $2,400 per month.[5] The reason for the increase was in dispute. According to plaintiff, the increase was intended to recover maintenance expenses and to account for market conditions at the time, but the trial court found that the rent increase was intended to account for Ronald Acuna's status as an additional occupant in the unit. In approximately October 2019, plaintiff prompted Ronald Acuna to submit a rental application in an effort to lead him to acknowledge he lived in the unit. After running the credit check, plaintiff approved Ronald Acuna as an additional tenant but did not inform him or defendants of this decision, and plaintiff did not offer a rental agreement to Ronald Acuna because defendants had not paid the $100 fee set forth in the lease addendum and they did not demand a new lease agreement.

The court entered judgment in favor of defendants and against plaintiff, for possession of the premises, costs, and attorney fees. The judgment was accompanied by an eight-page

---

[3]The following persons testified during the trial: plaintiff, Matt Wong, Tardvirdian, Markarina, Marita Acuna, and Ronald Acuna.

[4]The record of the oral proceedings at trial consists of a 37-page statement on appeal which was certified by the trial court with corrections made by defendants.

[5]The notice was introduced as an exhibit, but it is not included in the record on appeal.

statement of decision in which the court found that (1) defendants complied with the applicable limitations on occupancy, (2) plaintiff violated the Ordinance by her failure to offer a written lease agreement with a minimum one-year term following issuance of notice of rent increase, and (3) defendants proved the defense of equitable estoppel. Plaintiff filed a timely notice of appeal from the judgment.

DISCUSSION

Motion to Dismiss

Defendants simultaneously filed a motion to dismiss and a respondents' brief. They sought dismissal of the appeal on two grounds—plaintiff has forfeited the right to appeal by accepting the benefits of the judgment, and the appeal is moot. The factual basis for the motion is that after filing the notice of appeal, the parties executed a one-year lease agreement for the premises that included Ronald Acuna as a named tenant. Plaintiff opposes the motion. As explained, we deny defendants' motion.

The principle is well settled that "the right to accept the fruits of the judgment and the right to appeal therefrom are wholly inconsistent, and an election to take one is a renunciation of the other. [Citations.] An exception to the general rule exists where the appellant is concededly entitled to the benefits which are accepted and a reversal will not affect the right to those benefits. [Citations.]" (*Mathys v. Turner* (1956) 46 Cal.2d 364, 365, citing *Schubert v. Reich* (1950) 36 Cal.2d 298, 299-300.)

In this case, plaintiff has not accepted any "benefit" from the judgment given that the judgment was not beneficial to plaintiff. Defendants secured an unequivocal win at trial by way of judgment for possession in addition to their costs as the prevailing party. As explained in more detail *post*, plaintiff was required under the Ordinance to offer to defendants a written lease extension in conjunction with any rent increase, and she was not obligated to choose between seeking a lawful rent increase and preserving her right to challenge the validity of the judgment.

On the issue of mootness, "[g]enerally, courts decide only 'actual controversies' which will result in a judgment that offers relief to the parties. [Citations.] Thus, appellate courts as a

4

rule will not render opinions on moot questions: '[W]hen, pending an appeal from the judgment of a lower court, and without fault of the [respondent], an event occurs which renders it impossible for [the reviewing court] if it should decide the case in favor of [appellant], to grant [appellant] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. [Citations.]' [Citations.] The policy behind this rule is that courts decide justiciable controversies and will normally not render advisory opinions. [Citations.]" (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178-1179.)

One noted exception to the general rule and which is applicable here is that a court may decline to dismiss an appeal where the case involves an issue of broad public interest that is likely to reoccur. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1006.) The central issue involved in this appeal—interpretation of the occupancy and rent increase provisions of the Ordinance—is of significant public interest, that is capable of repetition and has not been addressed in any published decision. (*Id*. at p. 1008.)[6]

Merits of the Appeal

Plaintiff's claims of error center on whether defendants violated the lease agreement by permitting Ronald Acuna, an unauthorized adult occupant, to reside in the unit; and if so,

---

[6]It is plaintiff's position that dismissal is unwarranted because, if she prevailed and we reversed the judgment, she may be entitled to judgment for damages of past-due rent, along with trial court costs and attorney fees. This contention is not well taken. (*Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1842-1843 (*Cinnamon Square*).)

Plaintiff also argues against dismissal to address entitlement to the recovery of costs on appeal. Our Supreme Court has explained that "an appeal will not be retained solely to decide the question of liability for costs. [Citations.]" (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134.) The three cases cited by the high court concerned only whether dismissal was warranted to determine costs on appeal, and the opinion made no other mention of the costs it was referring to except that the parties were to bear their own costs on appeal. (*Id*. at pp. 134-135.) Appellate courts have construed the directive in *Paul v. Milk*, *supra*, as merely "granting discretion to the appellate court to refuse to decide a moot case where the only remaining issue is costs." (*Cinnamon Square*, *supra*, 24 Cal.App.4th at p. 1843, fn. 2 [questioning the wisdom of dismissing a case as moot where the cost award by the trial court exceeded $20,000]; accord, *County of Fresno v. Shelton*, *supra*, 66 Cal.App.4th at p. 1006 [citing *Cinnamon Square* in addressing the merits of a moot appeal].) Nevertheless, there is no need to determine whether our judgment will affect any substantial right of the parties because this appeal involves an issue of first impression. (See *County of Fresno v. Shelton*, *supra*, at p. 1008.)

whether defendants' breach of their lease covenant was a valid basis for the three-day notice and relieved plaintiff of her duty, under the Ordinance, to offer a written lease agreement in conjunction with the August 2019 rental increase.

Plaintiff's contentions are presented only as questions of law, with no challenge to the trial court's findings of fact or to the sufficiency of the evidence supporting the judgment. We therefore review de novo the trial court's interpretation of the applicable law. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.)

"[W]hen interpreting a statute[7] we must discover the intent of the Legislature to give effect to its purpose, being careful to give the statute's words their plain, commonsense meaning. [Citation.] If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary. [Citation.]" (*Kavanaugh v. West Sonoma County Union High School Dist*. (2003) 29 Cal.4th 911, 919.) If the language of the statute leaves doubt about its meaning, courts may consult other evidence of the Legislature's intent, such as the legislative history of the measure. (*Halbert's Lumber, Inc. v. Lucky Stores*, *Inc*. (1992) 6 Cal.App.4th 1233, 1239.) Finally, when a statute's language and legislative history do not reveal clear meaning, courts will apply reason, common sense, and practicality to the language at hand, interpreting the words to make them workable and reasonable. (*Ibid*.) An appellate court may disregard the literal interpretation of a statute only in rare cases in which it is clear the legislative body did not intend the law to have its literal effect. (*Gorham Co., Inc. v. First Financial Ins. Co*. (2006) 139 Cal.App.4th 1532, 1543-1544.)

*The Pertinent Law*

A person is guilty of unlawful detainer when, as applicable here, (1) the tenant has been served with three days' notice, in writing, requiring the performance of a covenant or condition of the lease agreement under which the property is held, and (2) the tenant fails to perform the

---

[7]Municipal rent control ordinances are interpreted using the same rules of interpretation applicable to statutes. (*People ex rel. Kennedy v. Beaumont Investment, Ltd*. (2003) 111 Cal.App.4th 102, 113.)

covenant or condition and continues in possession of the property. (Code Civ. Proc., § 1161, subd. (3).) The unlawful detainer statutes do not preempt municipalities from placing additional limitations on the grounds for eviction that aid in enforcing local rent control ordinances. (*Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 764.)

In 2019, the City of Glendale enacted Ordinance No. 5922, which repealed and amended certain provisions of chapter 9.30.010 of the Glendale Municipal Code relating to just cause and retaliatory evictions. In an attempt to remedy increasing inflation, along with a growing shortage of and an increased demand for housing in the city, the City Council decreed "that tenants are entitled to a contractual relationship with a landlord that offers some assurance of stability under the terms of a written lease so as to minimize displacement of tenants into a rental housing market which affords them few and expensive options." (§ 9.30.010.) Landlords must also provide relocation benefits to tenants under certain circumstances. (§§ 9.30.010, 9.30.035.)

Effective on February 12, 2019,[8] "no landlord of a rental complex of five (5) or more units on a parcel may request, impose, charge or receive monthly rent for any rental unit from an existing tenant in an amount that exceeds the base rent, without providing the tenant of the rental unit a new rent increase notice and an offer of a one (1) year lease that meet the requirements of this chapter." (§ 9.30.022.) The Ordinance also provides that a landlord shall offer a written lease agreement with a minimum term of one year to "[a]ny current tenant at the first time the landlord serves a notice of rent increase[9] following the effective date of the ordinance enacting this chapter, unless the landlord has notified the tenant that the tenant is in default under the month to month tenancy and offering a lease to the tenant may waive any claims the landlord has regarding the default." (§ 9.30.025, subd. (A)(1)(b).)

---

[8]The Ordinance was enforceable as of February 27, 2019.

[9]"'Rent increase' means any upward adjustment of the rent." (§ 9.30.020.)

Under the Ordinance, a landlord may file an action to recover possession of a rental unit if "[t]he tenant has violated a lawful obligation or covenant of the tenancy and has failed to cure such violation after having received written notice thereof from the landlord, other than a violation based on: [¶] . . . [¶] 2. The obligation to limit occupancy when the additional tenant who joins the occupants is a dependent child who joins the existing tenancy of a tenant of record or the sole additional adult tenant. The landlord has the right to approve or disapprove the prospective additional tenant, who is not a minor dependent child, provided that the approval is not unreasonably withheld." (§ 9.30.030, subd. (B)(2).)

A violation of the Ordinance may be raised as an affirmative defense in any unlawful detainer action. (§ 9.30.050, subd. (A).) The tenant bears the burden of proof to establish such an affirmative defense by a preponderance of the evidence. (Evid. Code, § 500; *California Valley Properties LLC v. Berlfein* (2020) 48 Cal.App.5th Supp. 1, 7 (*California Valley*).)

*The Occupancy Limitation*

The provisions of the written agreement pertinent to the issues raised on appeal can be found in paragraph 4 of the lease agreement and paragraph 9 of the addendum to the lease. Paragraph 4 identifies the persons—Markarian, Tarvirdian, Marita Acuna and Polet—who were authorized to occupy the premises. Paragraph 9 sets forth the number and circumstances under which unauthorized persons may occupy the premises. Specifically, paragraph 9 provides that no more than two persons may occupy the premises as overnight guests at any one time, and any guest staying over five days or nights without written consent of the owner is considered a breach of the lease. The addendum also specifies the "[r]esident shall pay additional rent at the rate of $100.00 per month for each additional person in excess of the above named who occupy the premises after first receiving written consent for those persons from the owner." (Capitalization omitted.)[10]

---

[10]The addendum also provides as follows: "Acceptance of additional rent or approval of a GUEST(S) shall not waive any requirement of this AGREEMENT nor convert the status of any "GUEST(S)" into that of a RESIDENT." (Some capitalization omitted.)

It was undisputed that both Ronald Acuna and Chloe Acuna resided in the unit since 2017, and without plaintiff's written authorization. On the surface, this appears to violate the written agreement by which defendants held possession of the premises and would appear to authorize the eviction proceeding after defendants failed to comply with the three-day notice. (See § 9.30.030, subd. (B); Code Civ. Proc., § 1161, subd. (3).) As noted, however, the Ordinance exempts occupancy-limit evictions "when the additional tenant who joins the occupants is a dependent child who joins the existing tenancy of a tenant of record or the sole additional adult tenant." (§ 9.30.030, subd. (B)(2).)

Plaintiff argues that the trial court erred as a matter of law by interpreting the Ordinance to allow both Chloe Acuna and Ronald Acuna as additional occupants. Plaintiff interprets section 9.30.030, subdivision (B)(2) as authorizing either the child or the adult, but not both. In support, plaintiff points to the council's use of the singular form in the phrase "the additional tenant" in section 9.30.030, as evidence that the council intended only one additional occupant—whether it be an adult or dependent minor—be permitted to join an existing tenancy. The rules of statutory interpretation dictate a contrary conclusion.

Preliminarily, and contrary to plaintiff's contention, the council's use of singular form in the phrase "additional tenant" is not dispositive. Certain statutes expressly declare that use of singular terms shall include the plural form. (See, e.g., Code Civ. Proc., § 17, subd. (a); Civ. Code § 14, subd. (a); Pen. Code, § 7.) No such expression is included in the Ordinance. (§ 9.30 et seq.) The Ordinance refers only to "the tenant" in the singular form with only one exception,[11] and defines the term "tenant" as "a person entitled by a written or oral agreement to occupy a rental unit to the exclusion of others, and actually occupy said rental unit." (§ 9.30.020). The Ordinance, however, does not define the phrase "additional tenant" and section 9.30.030 does not specify whether its protection extends only to one additional tenant.

---

[11]"Not later than ninety (90) days prior to the expiration of the lease and every lease year thereafter that a written lease is in effect pursuant to this section, the landlord shall notify those *tenants* identified in the lease of such expiration and offer in good faith in writing to *the tenants* a written lease or lease renewal with a minimum term of one (1) year, provided there is no just cause for eviction . . . ." (§ 9.30.025, subd. (F), italics added.)

Even in the absence of an express declaration, a singular form may be construed to include the plural as used in a municipal ordinance when the refusal to do so would render the ordinance "entirely ineffectual," or "the intention of the Legislature would be defeated and an absurd result reached." (*Ex parte Mathews* (1923) 191 Cal. 35, 43.) Such is the case here given that the totality of the Ordinance clearly does not limit tenancies to only a single tenant.

In addition, the pertinent clause of section 9.30.030—"the additional tenant who joins the occupants is a dependent child who joins the existing tenancy of a tenant of record or the sole additional adult tenant"—does not include any offsetting punctuation. A comma is "normally used to divide and isolate ideas" (*In re S.C.* (2009) 179 Cal.App.4th 1436, 1441); it is appropriate for courts to consider punctuation and grammatical structure in the interpretation of a statute (*Dow v. Lassen Irrigation Co.* (2013) 216 Cal.App.4th 766, 783). Also, use of the word "or" after the phrase "existing tenancy of a tenant of record", and before the phrase "the sole additional adult tenant", indicates the council's intent to provide alternative scenarios in which additional occupants may join an existing tenancy. (See *Los Angeles County-U.S.C. Medical Center v. Superior Court* (1984) 155 Cal.App.3d 454, 461 [the word "or" indicates an alternative such as "'either this or that'"].) Given that the phrase "the sole additional adult tenant" is preceded by the word "or" and is not separated from the rest of the sentence by a comma, we surmise the council did not intend to separately decree that the "additional tenant" permitted under these circumstances was either a dependent child or an adult. Ronald Acuna was "the sole additional adult tenant" for purposes of establishing a defense under section 9.30.030. The trial court's interpretation of the Ordinance is faithful to the principles of statutory interpretation.

*Approval of Ronald Acuna*

In order to determine whether defendants satisfied the affirmative defense under the Ordinance, we address whether plaintiff unreasonably withheld approval of Ronald Acuna as an additional tenant. As noted, plaintiff had the right to approve or disapprove Ronald Acuna as a prospective additional tenant "provided that the approval is not unreasonably withheld." (§ 9.30.030, subd. (B).)

10

The *California Valley* case involved an unlawful detainer action against a defendant who failed to comply with an occupancy restriction in the lease agreement. (*California Valley*, *supra*, 48 Cal.App.5th at p. Supp. 3.) The property was subject to the Los Angeles Rent Stabilization Ordinance, which mirrors the Ordinance in this case, by barring an over-occupancy eviction "when 'the additional tenant who joins the occupants of the unit . . . is . . . the sole additional adult tenant,' but the landlord is given 'the right to approve or disapprove the prospective additional tenant . . . , provided that the approval is not unreasonably withheld.' [Citation.]" (*Ibid*.) The appellate court affirmed a summary judgment entered in favor of the defendant, holding "an eviction due to a tenant violating an agreement by having an additional adult in a dwelling is only proper when the landlord has reasonably withheld approving the additional tenant," and the landlord provided no evidence to indicate that it reasonably disapproved the additional occupant. (*Id*. at p. Supp. 4.) The court went on to conclude that authorizing an eviction without considering any of the commonly accepted standards for screening tenants—such as the tenant's rental history, creditworthiness, employment, and ability to pay rent—"would permit evictions based on a nonsubstantive or trivial violation of a rental agreement and be counterproductive to [the ordinance's] stated purpose. [Citation.]" (*Id*. at pp. Supp. 10-11.)

In the case *sub judice*, the evidence established that plaintiff asked Ronald Acuna to complete a tenant application with the purpose of getting him "to acknowledge that he had been living on the premises." Although plaintiff apparently decided to approve Ronald Acuna as a tenant, she did not inform him or defendants of this decision. Also, while plaintiff was aware of the statutory obligation to offer a written lease agreement to Ronald Acuna, she declined to do so because defendants did not pay the $100 fee and they did not request a new agreement. But paragraph 9 of the lease addendum specified that defendants were obligated to pay additional rent at the rate of $100 per month for each additional occupant only "after first receiving written consent for those persons from the owner." (Capitalization omitted.) Because plaintiff withheld consent to Ronald Acuna's occupancy, defendants had no reason to

tender the additional $100 payment. Plaintiff could not circumvent this obligation by demanding payment prior to approval.

As well, plaintiff's refusal to approve Ronald's tenancy was not in good faith. Plaintiff's son Matt Wong, an attorney who assisted plaintiff in managing the property, testified that the refusal to add Ronald Acuna as an additional tenant was based in part on certain unidentified "transgressions" over the years, which would have been "forgiven" and Ronald Acuna would have been approved as an additional tenant if defendants had paid the $100 fee. The reasonable inference to be drawn from the evidence is that plaintiff led Ronald Acuna to submit a rental application under the auspices of being added as a tenant, but plaintiff was actually seeking proof that Ronald Acuna was residing in the unit in preparation for litigation. The Ordinance "requires the exercise of good faith, which shall mean honestly and without fraud, collusion or deceit. It shall further mean that the written lease is not being utilized as a method of circumventing any of the provisions of this chapter." (§ 9.30.025, subd. (H).) The trial court's finding that plaintiff did not reasonably disapprove Ronald Acuna as an additional tenant is supported by the Ordinance and the record. (See *California Valley*, *supra*, 48 Cal.App.5th at pp. Supp. 10-12.)

*Rent Increase*

Citing section 9.30.022,[12] plaintiff claims the remedy for an invalid rent increase based on a landlord's failure to offer an accompanying lease extension is that the rent increase simply does not become effective. This line of reasoning is unavailing.

---

[12]"As of the effective date of the ordinance enacting this chapter, no landlord of a rental complex of five (5) or more units on a parcel may request, impose, charge or receive monthly rent for any rental unit from an existing tenant in an amount that exceeds the base rent, without providing the tenant of the rental unit a new rent increase notice and an offer of a one (1) year lease that meet the requirements of this chapter. . . . As of the effective date of the ordinance enacting this chapter, no landlord of a rental complex of three (3) or more units on a parcel may request, impose, charge or receive monthly rent for any rental unit from an existing tenant in amount that exceeds the base rent, without providing the tenant of the rental unit a new rent increase notice and the notice of relocation eligibility pursuant to this chapter." (§ 9.30.022.)

The trial court found, and plaintiff appears to concede that she effected a notice of rent increase effective August 1, 2019.  Upon effectuation of the notice, the Ordinance obligated plaintiff to offer a concurrent written lease agreement of one year to defendants unless plaintiff "notified the tenant that the tenant is in default under the month to month tenancy and offering a lease to the tenant may waive any claims the landlord has regarding the default."  (§ 9.30.025, subd. (A)(1)(b).)  As noted, plaintiff was aware of Ronald Acuna's occupancy in the unit since at least 2017, but she did not notify defendants of their alleged breach of covenant prior to the notice of rent increase.  Thus, plaintiff violated the Ordinance by increasing the rent without offering defendants a concurrent one-year written lease agreement.  (§ 9.30.025, subd. (A).)

Contrary to plaintiff's reasoning, section 9.30.022 simply dictates the landlord's obligations upon effecting a rent increase as of the effective date of the Ordinance.  It is section 9.30.050 that provides the remedies for a violation of the Ordinance: "Failure of a landlord to comply with any of the provisions of this chapter shall provide the tenant with a defense in any legal action brought by the landlord to recover possession of the rental unit or to collect rent"; and "[r]emedies provided in this section are in addition to any other existing legal remedies and are not intended to be exclusive."  (§ 9.30.050, subds. (A), (D).)  Plaintiff's failure to comply with the Ordinance provided defendants with a complete defense to the unlawful detainer action (§ 9.30.050(A); see *Yanez v. Vasquez* (2021) 65 Cal.App.5th Supp. 1, 12).[13]

_____

[13]Plaintiff's claim that our reading of the ordinance will serve as a permanent bar to eviction is unpersuasive given that a landlord in plaintiff's position retains the right to reasonably disapprove the additional occupant (§ 9.30.030, subd. (B)(2)).  More, whether application of the ordinance to the underlying facts yields wise policy is a question for legislative, not judicial, determination.  (*T & A Drolapas & Sons, LP v. San Francisco Residential Rent Stabilization & Arb. Bd.* (2015) 238 Cal.App.4th 646, 654.)

There is no need to address the equitable estoppel issue given that we affirm the judgment based upon our determination that application of the ordinance is dispositive.  (See *In re Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.)

## DISPOSITION

The motion to dismiss is denied, and the judgment is affirmed. Defendants are awarded costs on appeal.

_____
P. McKay P. J.

We concur:

_____                _____
Kumar, J.                                               Ricciardulli, J.